**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Cumulus Media Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90346 (ARP)<br><br>Related Docket No. 20 |

**SOUNDEXCHANGE, INC.'S LIMITED OBJECTION TO CONFIRMATION OF THE
JOINT PREPACKED CHAPTER 11 PLAN OF REORGANIZATION OF CUMULUS
MEDIA, INC. AND ITS DEBTOR AFFILIATES**

SoundExchange, Inc. ("SoundExchange"), by its undersigned counsel, hereby submits this

limited objection (the "Limited Objection") to the *Joint Prepacked Chapter 11 Plan of*

*Reorganization of Cumulus Media, Inc. and Its Debtor Affiliates* (Docket No. 20) (the "Plan")[2]

and, in support thereof, respectfully states as follows:

**SUMMARY OF ARGUMENT**

1.      The Plan is intended to deleverage the Debtors' balance sheet while preserving their

business as a going concern.  To that end, the Plan provides that Allowed Administrative Expense

Claims and General Unsecured Claims will be paid "in the ordinary course of business as if the

Chapter 11 Cases had never been commenced."  For SoundExchange, whose rights arise under a

federal statutory and regulatory framework, "ordinary course" treatment means that (a) ongoing

and historical royalty obligations must remain fully subject to audit, adjustment, and enforcement

to the extent permitted under 17 U.S.C. §§ 112(e), 114(d)(2), and the applicable regulations; (b)

Late Fees must accrue and be paid as they would outside of bankruptcy; (c) SoundExchange must

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims, noticing, and solicitation agent at www.veritaglobal.net/cumulusmedia. The Debtors' service address for purposes of these chapter 11 cases is: 780 Johnson Ferry Road, N.E., Suite 500, Atlanta, Georgia 30342.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

1

327152659v3

be able to exercise its defensive setoff and recoupment rights without Plan imposed procedural hurdles; and (d) SoundExchange must not be compelled to funnel its statutory enforcement rights through a bankruptcy-specific gatekeeping and exclusive-jurisdiction regime that would not apply outside of chapter 11 and (e) any bankruptcy-driven delay between confirmation and the Effective Date must not allow statutory and regulatory lookback periods and other time-limited audit and enforcement rights to expire, but instead must be accompanied by appropriate tolling and authority for SoundExchange to continue and complete pending audits and related negotiations during that period. Without these changes, the Plan will operate to impair SoundExchange's claims and statutory rights notwithstanding their Unimpaired classification under section 1124 of the Bankruptcy Code and will fail to treat SoundExchange "as if the Chapter 11 Cases had never been commenced."

## GENERAL BACKGROUND

2.      On March 4, 2026 (the "Petition Date"), Cumulus Media Inc. and its affiliated debtors (collectively, the "Debtors") commenced these prepackaged chapter 11 cases in this Bankruptcy Court.

## SOUNDEXCHANGE AND ITS CLAIMS

3.      SoundExchange, a non-profit Delaware corporation, is the sole "Collective" authorized by the United States Copyright Royalty Board to receive statements of account, royalty payments and reports of use from entities, such as the Debtors, that make ephemeral reproductions and public performances of sound recordings eligible for the statutory licenses set forth in sections 112 and 114 of the Copyright Act, 17 U.S.C. §§ 112(e) and 114 (d)(2) (the "Statutory Licenses").

4.      For all license periods prior to January 1, 2026, the Debtors were required to remit to SoundExchange an annual minimum fee of one thousand dollars ($1,000) per channel or station per year, with the annual minimum fee capped at one hundred thousand dollars ($100,000) for one

2

327152659v3

hundred (100) or more channels or stations. 37 C.F.R. § 380.10(b). Payment of the annual minimum fee was due by January 31 of the applicable year or, if no eligible transmissions or ephemeral reproductions were made until after January 31, by the forty-fifth (45th) day after the end of the month in which the Debtors first made eligible transmissions. 37 C.F.R. § 380.2(c). Beginning with the 2026 license year, the annual minimum fee increases from $1,000 to $1,100 per channel or station per year, and the annual minimum fee is capped at $110,000, equal to one hundred (100) times the per-station amount. 37 C.F.R. § 380.41(b). Payment of the annual minimum fee is due by January 31 of the applicable year or, if no eligible transmissions or ephemeral reproductions are made until after January 31, by the thirtieth (30th) day after the end of the month in which the Debtors first make eligible transmissions. 37 C.F.R. § 380.42(c).

5.      Once the Debtors' royalty payment obligations exceed the annual minimum fee paid to SoundExchange, the Debtors are required to make monthly royalty payments to SoundExchange. For all license periods prior to January 1, 2026, the Debtors are required to issue monthly royalty payments to SoundExchange on or before the 45th day after the end of the month in which Debtors made public performances and ephemeral reproductions eligible for the Statutory Licenses. 37 C.F.R. § 380.2(b). Beginning with the 2026 license year, the Debtors must remit monthly royalty payments, statements of account, and reports of use to SoundExchange on or before the thirtieth (30th) day after the end of each month in which the Debtor makes eligible public performances and ephemeral reproductions. 37 C.F.R. § 380.42(b).

6.      To the extent that the Debtors fail to timely remit the applicable royalty payments or statements of accounts to SoundExchange, the Debtors incur late fees (the "Late Fees") of "1.5% (or the highest lawful rate, whichever is lower) of the late payment amount per month" for either a late payment or late statement of account. 37 C.F.R. § 380.2(d); 37 C.F.R. § 380.42(d)(1). The

3

Late Fees accrue from the due date of the payment or statement of account until the payment or related statement of account is received by SoundExchange. *Id.*

7.       SoundExchange also has authority under the applicable regulations to audit users of the Statutory Licenses, including the Debtors, once a year for any or all of the prior three calendar years.   37 C.F.R. § 380.46(b).   Among other things, these audit rights allow SoundExchange to verify the accuracy of royalty payments and reports of use and, where appropriate, to recover underpayments, applicable Late Fees,[3] and audit costs.   37 C.F.R. § 380.46(g) and (h).   To the extent any such audit identifies an overpayment of statutory royalties by the Debtors, the Debtors are not entitled to any refund, rebate, credit, recoupment, or setoff of such overpayment against any current or future amounts owed to SoundExchange on account of the Statutory Licenses unless otherwise agreed to by SoundExchange and the Debtors (the "Overpayment Policy").   37 C.F.R. § 380.46(g).

8.       Prior to the Petition Date, SoundExchange instituted an audit of the Debtors for the period 2017 to 2019 and 2020 to 2022 (the "Pending Audits").   The Debtors and SoundExchange have been engaged in good faith negotiations regarding resolution of the Pending Audits. SoundExchange's claims for the Pending Audits constitute Disputed Claims under the Plan.

9.       SoundExchange asserts a General Unsecured Claim against the Debtors consisting of: (i) general unsecured claims for royalties (including minimum fees) and Late Fees accruing prior to the Petition Date pursuant to the Statutory Licenses (the "Prepetition Royalty Claims"); (ii) general unsecured claims arising from the Pending Audits, together with any related Late Fees

---

[3]       The applicable Late Fee for underpayments discovered through an audit accrue at the rate of (i) 1% (or the highest lawful rate, whichever is lower) for the period beginning January 1, 2026 and (ii) 1.5% (or the highest lawful rate, whichever is lower) for the period prior to January 1, 2026 of the underpayment amount per month during the period starting on the date that the relevant notice of intent to audit is filed with the Copyright Royalty Judges, and ending on the date that the auditor provides its written report.  37 C.F.R. § 380.42(d)(2)(i).  The late fee applicable to the underpayment so discovered shall at the rate of 1% at all other times between the due date and the date that SoundExchange receives the underpayment so discovered.  37 C.F.R. § 380.42(d)(2)(ii).

327152659v3

and audit costs (the "Pending Audit Claims") and (iii) unliquidated and contingent general unsecured claims arising from audits of the period January 1, 2023 to the Petition Date (the "Contingent Audit Claims," and together with the Pending Audit Claims, the "Prepetition Audit Claims"). The Prepetition Royalty Claims and the Prepetition Audit Claims are together referred to as the "SoundExchange GUC Claims".

10.     SoundExchange asserts an Administrative Expense Claim against the Debtors consisting of (i) administrative expense claims for royalties (including minimum fees) and Late Fees accruing between the Petition Date and the Effective Date pursuant to the Statutory Licenses (the "Post-petition Royalty Claims") and (ii) unliquidated and contingent administrative expense claims arising from audits of the period from the Petition Date through the Effective Date (the "Post-Petition Audit Claims" and together with the Post-Petition Royalty Claims, the "SoundExchange Administrative Claims").

## SUMMARY OF KEY PLAN TERMS

### A. Treatment of Claims

11.     The stated intent of the Plan is to treat creditors like SoundExchange as if the Chapter 11 Cases had never been filed by resolving Claims in the ordinary course of business. To that end, the Plan provides that if an Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business, payment shall be made in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim. *See Plan,* Article II.A. Similarly, the Plan provides that the Reorganized Debtors shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced. *See Plan*, Article III.D.6.

327152659v3

12. The Plan defines an Allowed Claim as a Claim for which no objection to allowance has been interposed, either in Bankruptcy Court or in the ordinary course of business, with the Reorganized Debtors retaining all claims, defenses, and setoff rights with respect to Allowed Claims that are Unimpaired pursuant to the Plan. *See Plan,* Article 1.A.42. If a Claim is Disputed, the Plan provides that the Reorganized Debtors and the Holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced. *See Plan*, Article VI.A.

13. While the Plan is premised on resolving claims in the ordinary course of business, as if the Chapter 11 Cases had never been commenced, the Plan nevertheless provides that no payment or distribution shall be made on account of a Claim until such Disputed Claim becomes an Allowed Claim. *See Plan,* Article VI.F. This language could be interpreted to mean that if any portion of a Claim is Disputed, a creditor will not receive any payment on account of its Claim until the entire Claim becomes Allowed.

### B. Discharge and Injunction with Respect to Claims and Causes of Actions

14. The Plan discharges all Claims and Causes of Action against the Debtors or the Reorganized Debtors of any nature that arose prior to the Effective Date and provides that "any default or "event of default" by the Debtors or Affiliates with respect to any Claim that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date." *See Plan,* Article VIII.A.

15. The Plan also contains an injunction permanently enjoining Holders of Claims from "taking any action that would interfere with implementation or consummation of the Plan in relation to any Claim…that is extinguished, discharged, or released pursuant to this Plan". *See Plan,* Article VIII.F. This includes a permanent injunction regarding (i) commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in

6

connection with or with respect to any such Claims, Interests, or Causes of Action; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; and (iii) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Order. *Id.*

16.     The Plan further requires that, before any Entity may commence or pursue a Claim or Cause of Action against the Debtors or the Exculpated Parties relating to, arising out of, or in connection with the Chapter 11 Cases, the Plan, or related transactions, such Entity must first obtain, after notice and a hearing, an order of the Bankruptcy Court determining that such Claim or Cause of Action represents a colorable Claim (the "Colorable Claim Finding") and specifically authorizing the prosecution of such Claim or Cause of Action against any such Debtor or Exculpated Party. *Id.*

## C. Setoff and Recoupment Rights

17.     The Plan provides that the Debtors and Reorganized Debtors may setoff or recoup any Claims or Causes of Action they have against a creditor against any Plan distribution or payment on that creditor's Allowed Claim. *See Plan*, Article XII.K.  The Plan preserves a creditor's setoff and recoupment rights in connection with Claims reconciliation and as a defense to any claim or action by the Debtors, the Reorganized Debtors, or any successors to the Debtors. *Id.*  However, such setoff and recoupment rights are enjoined under the Plan unless the creditor has filed a motion requesting the right to exercise such rights on or before the Effective Date. *See Plan*, Article VIII.F.

7

327152659v3

### D.  Retention of Exclusive Jurisdiction

18.    The Plan provides that the Bankruptcy Court shall have sole and exclusive jurisdiction over the Colorable Claim Finding.  *Id.*  Moreover, the Plan provides that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtors that arose prior to the Effective Date.  *See* Plan, Article XI, page 73.

### E.  Conditions to the Effective Date and Duration of Stays and Injunctions

19.    The Plan conditions the occurrence of the Effective Date on the Debtors' obtaining all required regulatory approvals, including approvals from the Federal Communications Commission ("FCC").  *See Plan*, Article IX.A(j).

20.    The Plan provides that all injunctions or stays in effect in the Chapter 11 Cases on the Confirmation Date shall remain in full force and effect until the Effective Date.  *See Plan,* Article XII.G.  Additionally, the Plan's injunction takes effect upon entry of the Confirmation Order.  *See Plan,* Article VIII.F.

**LIMITED OBJECTION**[4]

21.    Under section 1124 of the Bankruptcy Code, a claim is "Unimpaired" only if the plan leaves unaltered the legal, equitable, and contractual rights to which such claim entitles the holder. 11 U.S.C. § 1124.  In other words, a creditor is Unimpaired only if, after confirmation, it enjoys substantially the same bundle of rights and remedies it would have had if the bankruptcy case had never been filed.  Here, the Plan purports to treat the SoundExchange GUC Claims and the SoundExchange Administrative Claims as Unimpaired and to pay them "in the ordinary course of business as if the Chapter 11 Cases had never been commenced."  That promise requires more

---

[4]    The Plan also contains broad third-party releases.  SoundExchange has timely submitted a Release Opt Out Form with respect third-party releases contained in the Plan and, on that basis, does not raise a substantive objection to the Plan's third-party release provisions.

8

than the mere absence of an express reduction in the principal amount owed to SoundExchange. It requires that SoundExchange's statutory and regulatory rights under 17 U.S.C. §§ 112(e), 114(d)(2), and the applicable regulations, including audit, enforcement, Late Fees, setoff and recoupment, and forum selection rights, remain fully intact and exercisable in the same manner and in the same fora as they would have been if these Chapter 11 Cases had never been filed.  To the extent the Plan's provisions modify or restrict those rights, the SoundExchange GUC Claims and the SoundExchange Administrative Claims cannot properly be considered "Unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

I.       **The Plan's Discharge and Injunction Provisions Impermissibly Impair SoundExchange's Audit Claims Notwithstanding the Promise of Unimpaired Treatment**

22.      Under the Plan, the SoundExchange GUC Claims and the SoundExchange Administrative Claims are Unimpaired.  Notwithstanding this, the Plan deems pre-Effective Date "defaults" cured and enjoins creditors from taking any action to enforce any Claim or Cause of Action that arose prior to the Effective Date.  If confirmed in its current form, the Plan would enjoin SoundExchange from (i) continuing the Pending Audits to conclusion and liquidating the resulting claims and (ii) exercising its statutory audit and enforcement rights with respect to the Prepetition Audit Claims and Post-Petition Audit Claims that, under federal regulation, remain open to audit, adjustment, and enforcement.  In effect, the Plan threatens both to cut off audits that have already been commenced and to foreclose audits that SoundExchange is statutorily entitled to commence in the future for pre-Effective Date periods.  Such an outcome cannot be reconciled with the Debtors' promise that the SoundExchange GUC Claims and the SoundExchange Administrative Claims will be treated "as if the Chapter 11 Cases had never been commenced" and is inconsistent with the requirements for Unimpaired status under section 1124 of the Bankruptcy Code.

327152659v3

**II.    The Plan's Treatment of Late Fees Does Not Leave SoundExchange's Claims Unimpaired**

23.    Outside of bankruptcy, the Late Fees prescribed by 37 C.F.R. § 380.2(d), 37 C.F.R. § 380.42(d)(1), and 37 C.F.R. § 380.42(d)(2) automatically and continuously accrue on any underpayment until the corresponding royalties and statements of account are brought current. The Late Fees are not a discretionary add-on, but a mandatory, formulaic component of the federal statutory rate structure that Congress and the Copyright Royalty Board have determined is necessary to compensate copyright owners and performers for the compliance risk associated with late payments.  In other words, they are part of the economic bargain for use of the Statutory Licenses.

24.    Prohibiting the accrual and payment of Late Fees on account of the SoundExchange GUC Claims and the SoundExchange Administrative Claims would excise a material component of that federally prescribed compensation and deprive SoundExchange and its constituents of the full benefit of the statutory and regulatory regime. That outcome cannot be reconciled with the Plan's promise that SoundExchange will be treated "in the ordinary course of business as if the Chapter 11 Cases had never been commenced" and that its claims are "Unimpaired."

25.    Moreover, because the Pending Audit Claims are classified as Disputed Claims and the Plan provides that no payment or distribution shall be made "on account of a Claim" until such Disputed Claim becomes an Allowed Claim, the Debtors could withhold payment for years on the undisputed portions of SoundExchange's claims while avoiding any obligation to pay the Late Fees that would invariably accrue outside of bankruptcy. That structure invites strategic delay, shifts the economic burden of the claims-reconciliation process entirely onto SoundExchange and the artists and copyright owners it represents, and is fundamentally at odds with the concept of "Unimpaired" treatment.

327152659v3

26.     Accordingly, to provide the ordinary-course, as-if-no-bankruptcy treatment the Plan promises, and to avoid impermissible impairment of SoundExchange's statutory and regulatory rights, any amounts ultimately determined to be owing to SoundExchange on account of the SoundExchange GUC Claims and the SoundExchange Administrative Claims must include the associated Late Fees accruing at the rates prescribed by 37 C.F.R. § 380.2(d), 37 C.F.R. § 380.42(d)(1), 37 C.F.R. § 380.42(d)(2), and any other applicable non-bankruptcy law, from the applicable due dates through the date of actual payment.

### III.     Plan's Gatekeeping and Exclusive-Jurisdiction Provisions Improperly Restrict SoundExchange's Ability to Exercise Statutory Rights "As If the Chapter 11 Cases Had Never Been Commenced"

27.     The Plan (i) requires a Colorable Claim Finding from this Bankruptcy Court before commencing or pursuing certain Claims or Causes of Action; and (ii) vests this Bankruptcy Court with exclusive jurisdiction over disputes concerning Claims against the Debtors that arose prior to the Effective Date.  These provisions conflict with the Plan's commitment that the SoundExchange GUC Claims and the SoundExchange Administrative Claims will be resolved "in the ordinary course of business as if the Chapter 11 Cases had never been commenced."  Outside of bankruptcy, SoundExchange would not be required to obtain a gatekeeping order from a bankruptcy court before exercising statutory rights or commencing litigation in an appropriate forum, nor would this Bankruptcy Court enjoy exclusive jurisdiction over such disputes.  To the extent the Plan requires SoundExchange to seek a Colorable Claim Finding or to proceed only in this Bankruptcy Court to liquidate or enforce its claims and related statutory rights, it impermissibly alters SoundExchange's substantive and procedural rights and thereby impairs the SoundExchange GUC Claims and the SoundExchange Administrative Claims in violation of sections 1124 of the Bankruptcy Code.

11

IV.     **The Plan's Setoff and Recoupment Provisions Improperly Alter the Overpayment Policy and Condition SoundExchange's Defensive Rights on a Pre-Effective Date Motion Practice**

28.     The Plan provides that the Debtors and Reorganized Debtors may setoff or recoup any Claims or Causes of Action they have against a creditor against any Plan distribution or payment on that creditor's Allowed Claim. *See Plan*, Article XII.K. This language could be interpreted as overriding the Overpayment Policy by allowing the Debtors to setoff or recoup any overpayment determined as a result of an audit against any payment or distribution on account SoundExchange's Allowed Claim. If this interpretation is correct, then as proposed the Plan does not resolve the SoundExchange GUC Claims and the SoundExchange Administrative Claims "in the ordinary course of business as if the Chapter 11 Cases had never been commenced."

29.     Additionally, the Plan purports to preserve creditors' setoff and recoupment rights in connection with Claims reconciliation and as a defense to any Claim or Cause of Action by the Debtors or the Reorganized Debtors. However, the Plan enjoins creditors from exercising setoff or recoupment unless they filed a motion requesting the right to exercise such rights on or before the Effective Date. Setoff and recoupment, particularly when used defensively or as a netting mechanism, are substantive rights that SoundExchange would possess outside of bankruptcy. Conditioning the exercise of those rights on the filing of a motion by an arbitrary deadline—and subjecting any future exercise of those rights to the Plan's injunction—creates a procedural barrier that would not exist "as if the Chapter 11 Cases had never been commenced." To the extent the Plan seeks to bar SoundExchange from asserting setoff and recoupment defensively after the Effective Date, or to require advance motion practice as a condition to doing so, it impairs SoundExchange's rights and is inconsistent with the Plan's Unimpaired classification of General Unsecured Claims and Administrative Expense Claims.

12

327152659v3

30.     For the avoidance of doubt, SoundExchange does not seek to expand or create any new rights of setoff or recoupment in its favor; it seeks only to preserve whatever defensive setoff and recoupment rights it has under applicable non-bankruptcy law and the Statutory Licenses, and to ensure that the Plan cannot be construed to authorize the Debtors to exercise setoff or recoupment in violation of the Overpayment Policy.

## V.     The Bankruptcy-Driven Delay Before the Effective Date Risks Eroding SoundExchange's Rights

31.     The Plan conditions the Effective Date on the Debtors obtaining all necessary regulatory approvals, including from the FCC, which could take months if not longer.  During the period between the Confirmation Date and the Effective Date of the Plan, SoundExchange's ability to commence or continue audits or enforcement actions in the ordinary course is constrained by the automatic stay and the Plan injunction, even as statutory and regulatory time periods continue to run.  While section 108(c) of the Bankruptcy Code provides a limited extension of certain deadlines for "commencing or continuing a civil action in a court other than a bankruptcy court," it does not fully protect the time-limited audit and enforcement rights SoundExchange holds under the Statutory Licenses, including regulatory lookback periods and other non-judicial deadlines.  If, by the time of the Effective Date, SoundExchange has lost the ability to audit or enforce claims for certain periods because the Debtors remained in Chapter 11 pursuing regulatory approvals while applicable statutory and regulatory time periods continued to run, then SoundExchange's rights with respect to those periods will have been practically impaired notwithstanding the Plan's characterization of its claims as "Unimpaired."  To align the Plan with its "as if the Chapter 11 Cases had never been commenced" standard, the Plan must ensure that SoundExchange loses no audit or enforcement rights as a result of the time consumed by these Chapter 11 Cases and any

327152659v3

delay in reaching the Effective Date, including by tolling applicable time-based limitations and barring the Debtors from asserting defenses based on the passage of time during that period.

32.     Moreover, SoundExchange should not be required to wait until the Effective Date of the Plan to continue discussions and negotiations regarding the Pending Audit Claims. Allowing the Pending Audit Claims to go forward as of the Confirmation Date will narrow or resolve disputes, reduce the prospect of future litigation, and mitigate the continued accrual of Late Fees and other amounts that would otherwise increase the burdens on the estates, thereby benefitting both SoundExchange and the Debtors.

## PROPOSED LANGUAGE TO RESOLVE LIMITED OBJECTION

33.     To resolve the foregoing issues, SoundExchange respectfully requests that the Confirmation Order include the following language:

> Notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement, the Plan Supplement, any other document filed in connection with confirmation of the Plan or this Confirmation Order (collectively, the "Plan Documents"), and solely with respect to SoundExchange, Inc. ("SoundExchange"), it is hereby ORDERED that:
>
> (a)     Nothing in the Plan Documents shall affect, modify, diminish, enhance, or impair the rights, defenses, and obligations of SoundExchange, the Debtors, the Reorganized Debtors, or any third party as set forth in 17 U.S.C. §§ 112(e) and 114(d)(2), 37 C.F.R. Part 380 (including, without limitation, 37 C.F.R. §§ 380.2, 380.10, 380.41, 380.42, and 380.46), and any other applicable non-bankruptcy law (collectively, the "Statutory Licenses and Regulations"). The Debtors and Reorganized Debtors shall pay all amounts due and owing to SoundExchange under the Statutory Licenses and Regulations for periods prior to, on, and after the Effective Date, including, without limitation, annual minimum fees, royalties, and late fees, in the ordinary course of business and in accordance with the Statutory Licenses and Regulations, to the same extent and in the same manner as if the Chapter 11 Cases had never been commenced.
>
> (b)     For purposes of this Confirmation Order, the term "Audit Claims" shall mean all claims, rights, and remedies of

327152659v3

SoundExchange arising from or relating to audits of the Debtors' and Reorganized Debtors' compliance with the Statutory Licenses and Regulations for calendar years 2017 through and including each calendar year (or partial calendar year) ending on or before the Effective Date (the "Audit Years") including any related claims for underpayments, late fees, audit costs, and any other amounts recoverable under applicable non-bankruptcy law. Notwithstanding anything to the contrary in the Plan Documents, the Audit Claims, whether arising before, on, or after the Effective Date, shall not be discharged, released, exculpated, enjoined, or otherwise impaired in any way by the Plan Documents or this Confirmation Order and all such Audit Claims are expressly preserved. The Audit Claims may be asserted, liquidated, and enforced against the applicable Debtors or Reorganized Debtors in the ordinary course of business and in accordance with the Statutory Licenses and Regulations, as if the Chapter 11 Cases had never been commenced and the Debtors and Reorganized Debtors shall not be entitled to any refund, rebate, credit, recoupment, or setoff of any overpayment determined in connection with the Audit Claims against any current or future amounts owed to SoundExchange in accordance with the Statutory Licenses and Regulations.

(c)      Notwithstanding anything to the contrary in the Plan Documents, nothing shall limit the accrual or payment of late fees at the rates prescribed by 37 C.F.R. § 380.2(d), 37 C.F.R. § 380.42(d)(1), 37 C.F.R. § 380.42(d)(2), 37 C.F.R. § 380.46(d), or other applicable non-bankruptcy law with respect to the Audit Claims or other statutory royalty obligations owing to SoundExchange.

(d)      Notwithstanding anything to the contrary in the Plan Documents, nothing shall limit, impair, enjoin, or otherwise restrict SoundExchange's rights of setoff and recoupment under applicable non-bankruptcy law, including, without limitation, SoundExchange's ability to assert setoff and recoupment defensively (including as netting mechanisms) against any Claims or Causes of Action brought by the Debtors or the Reorganized Debtors. SoundExchange's ability to exercise such rights in the ordinary course of business, as if the Chapter 11 Cases had never been commenced, shall be preserved to the same extent as under applicable non-bankruptcy law, and SoundExchange shall not be required to file a motion by the Effective Date or obtain an order from this Bankruptcy Court as a condition to exercising such setoff or recoupment rights.   The exercise of such rights by SoundExchange shall not constitute a violation of the Plan's injunction.

15

(e)      Notwithstanding anything to the contrary in the Plan Documents, (i) SoundExchange shall not be required to obtain a "Colorable Claim" finding or any other advance authorization from this Bankruptcy Court as a precondition to commencing, continuing, or prosecuting any action or proceeding to audit, liquidate, or enforce the Audit Claims or to enforce statutory royalty obligations in accordance with the Statutory Licenses and Regulations; and (ii) the Bankruptcy Court shall not have exclusive jurisdiction over such actions or proceedings. SoundExchange may commence and prosecute such actions or proceedings in any court or tribunal of competent jurisdiction or before any governmental or regulatory authority, in each case to the same extent as if the Chapter 11 Cases had never been commenced.  For the avoidance of doubt, nothing in this paragraph shall divest this Bankruptcy Court of any jurisdiction otherwise conferred by 28 U.S.C. §§ 157 and 1334 to interpret and enforce the Plan and this Confirmation Order.

(f)      Notwithstanding anything to the contrary in the Plan Documents, all statutory and regulatory time periods, lookback windows, limitation periods, and other time-based requirements applicable to SoundExchange's audit and enforcement rights under the Statutory Licenses and Regulations with respect to the Audit Years (including, without limitation, any deadlines to initiate or complete audits, to assert audit findings, or to commence enforcement proceedings) shall be deemed tolled for the period from the Petition Date through and including the Effective Date and the Debtors and Reorganized Debtors shall not assert, and are hereby barred and estopped from asserting, any defense based on the passage of time during such period (including, without limitation, any statute of limitations, laches, waiver, estoppel, or similar time-based defense).

(g)      Notwithstanding anything to the contrary in the Plan Documents, upon entry of this Confirmation Order, SoundExchange may continue, conduct, and complete the Audit Claims for the period 2017 to 2019 and 2020 to 2022 (the "Pending Audit Claims") in the ordinary course of business and in accordance with the Statutory Licenses and Regulations, and may engage in discussions and negotiations with the Debtors or Reorganized Debtors to liquidate, resolve, or settle the Pending Audit Claims.  Such audit and negotiation activities shall not be deemed to violate the automatic stay, any injunction imposed by the Plan or this Confirmation Order, or any other provision of the Plan Documents.

(h)      For the avoidance of doubt, in the event of any inconsistency between this Confirmation Order and the Plan Documents with

16

327152659v3

respect to SoundExchange, the terms of this Confirmation Order shall control.

## RESERVATION OF RIGHTS

34.     SoundExchange reserves the right to amend or supplement this Limited Objection at any time and in any manner and reserves all rights it may have under applicable law and the Bankruptcy Code.  Nothing herein shall be construed as a waiver of any rights SoundExchange may have under the Statutory Licenses, applicable regulations, or non-bankruptcy law, all of which are expressly preserved.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Bankruptcy Court should sustain the Limited Objection, deny confirmation of the Plan unless the issues raised herein are addressed and grant such further relief as this Bankruptcy Court deems proper.

Dated: April 7, 2026

Respectfully Submitted,

**Troutman Pepper Locke LLP**

By:  */s/ Evelyn J. Meltzer*
Evelyn J. Meltzer (admitted pro hac vice)
Hercules Plaza, Suite 1000
1313 Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: evelyn.meltzer@troutman.com

*Counsel to SoundExchange, Inc.*

17

327152659v3

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I caused true and correct copies of the foregoing *SoundExchange, Inc.'s Limited Objection to Confirmation of the Joint Prepacked Chapter 11 Plan of Reorganization of Cumulus Media, Inc. and Its Debtor Affiliates* to be served by email upon the parties set forth on the attached list; and all ECF participants registered in this case were served electronically on the date of filing through the court's ECF system at their respective email addresses registered with the court.

Dated: April 7, 2026

**Troutman Pepper Locke LLP**

*/s/ Evelyn J. Meltzer*
Evelyn J. Meltzer
Hercules Plaza, Suite 1000
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: evelyn.meltzer@troutman.com

*Counsel for SoundExchange, Inc.*

327295655v1

**SERVICE LIST**

Richard Denning
Cumulus Media Inc.
780 Johnson Ferry Road, N.E.
Suite 500
Atlanta, GA 30342
Richard.Denning@cumulus.com

(*Co-Counsel to the Debtors*)
John F. Higgins and M. Shane Johnson
Porter Hedges LLP
1000 Main St., 36th Floor
Houston, TX 77002
jhiggins@porterhedges.com
sjohnson@porterhedges.com

(*Co-Counsel to the Debtors*)
Jacob A. Adlerstein, Kyle J. Kimpler, Sarah
Harnett, and Stephanie Lascano
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
jadlerstein@paulweiss.com
kkimpler@paulweiss.com,
sharnett@paulweiss.com
slascano@paulweiss.com

(*Counsel to the Ad Hoc Group)*
Scott J. Greenberg, Michael J. Cohen, and
Stephen D. Silverman
Gibson, Dunn & Crutcher LLP
200 Park Ave
New York, NY 10166
sgreenberg@gibsondunn.com
mcohen@gibsondunn.com
ssilverman@gibsondunn.com

(*Counsel to the Consenting ABL Parties)*
Steven Fox
Riemer & Braunstein LLP
Times Square Tower (Suite 2506)
Seven Times Square
New York, NY 10036
SFox@riemerlaw.com

(*Counsel to the Consenting ABL Parties)*
Rebecca Matthews
FBT Gibbons LLP
Rosewood Court
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
rmatthews@fbtgibbons.com

Ha Nguyen and Andrew Jimenez
Office of the United States Trustee for the
Southern District of Texas
515 Rusk Avenue, Suite 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov
Andrew.Jimenez@usdoj.gov

327295655v1